## WISE-BUCHANAN COAL CO. v. RISCO et al.

No. 21902. Opinion Filed July 7, 1931.

Hayes, Richardson, Shartel, Gilliland &
Jordan and J. W. Hinton, for petitioner.

G. L. Bynum, for respondents.

ANDREWS, J. This is an original pro-
ceeding to review an award of the State In-
dustrial Commission in favor of the claim-
ant, respondent herein, against the petitioner
herein.

The State Industrial Commission found
that the claimant sustained an accidental
personal injury arising out of and in the
course of his employment with the respond-
ent, on the 5th day of February, 1929; that,
while so employed in the occupation of dig-
ging coal, something hit the claimant in the
right eye, and that as a result thereof the
claimant was temporarily totally disabled for
three weeks, and sustained a permanent loss
of vision of the right eye to the extent of
85 per cent. An award was made which was
based on those findings.

The petitioner herein presents three ques-
tions for determination, which will be dis-
cussed in the order presented.

The first question submitted is:

"Whether or not there is any competent
evidence in the record to support the find-
ing of the Commission that the claimant
sustained a compensable injury."

The claimant testified, without objection,
that, while in the employ of the petitioner
as a coal miner and engaged in that work,
he received an injury to his eye on the 5th
of February, 1929. He said:

'I was digging—I don't know what it was,
but it hit me on this eye, and I dropped my
tools and went down to my room and got
some cold water for awhile—for about 45
minutes, and I went back on my place, and
the boy told me 'You better go home, you
will get worse'; it was between one and two
o'clock then."

In view of that testimony, we cannot say
that there was no competent evidence reason-
ably tending to support the finding of the
Commission as to the accidental personal in-
jury.

The second question is:

"Whether or not there is any competent
evidence in the record to sustain the find-
ing of the Commission that claimant suf-
fered any partial permanent disability; and
to the extent found by the Commission."

The claimant testified, without objection:

"Q. You got hurt on February 5, 1929, in
that mine with a piece of coal or something?
A. Yes, sir. Q. That is what was the mat-
ter with your eye, is that right? A. Yes,
sir."

In view of that testimony, we cannot say
that there is no competent evidence reason-
ably tending to support the finding of the
Commission as to permanent loss of vision
of the right eye. However, this question, as
will be noted, amounts to two questions, and
we have examined the record carefully with
reference to the latter portion thereof, which
relates to the extent of the loss of vision
of the right eye. The record shows that
claimant was a man of the age of 60 years.
He testified that his eye had not been in-
jured prior to the time of the alleged in-
jury. No one saw the alleged injury except
the claimant, no witness, other than the
claimant, testified as to the injury, and no
witness testified that the claimant had com-
plained of an injury until sometime after
the date of the alleged injury. The claim-
ant testified that he selected a specialist to
examine his eye and to treat it, and it ap-
pears from the record that that treatment
was given prior to the time that the claim-
ant claims to have notified the superintend-
ent of the petitioner of the injury. He tes-
tified that that specialist, Dr. Windham,
"took nothing out of the eye." Yet, when
the petitioner asked him for an examina-
tion, he testified, "I knew then that I was
blowed up then on account of my eye." That
statement occurs twice in the record, and it
cannot be questioned but that he knew the
condition of his eye. The record shows,
without question other than the statement
of the claimant, that prior to the alleged in-
jury the claimant had sustained an injury
to the right eye while employed by the
Crowe Coal Company, and that he had a
serious loss of vision in the right eye prior
to the time of the alleged injury. We would
be compelled to accept, as sufficient to sup-
port the award of the Industrial Commis-
sion, the testimony of the claimant that he
had not been injured prior to the time of
the alleged injury, and that his eye was
all right at the time of that injury, if it
was not for the fact that, near the close of
the hearing, the claimant admitted the in-
correctness of his former testimony. He
was recalled for further examination, and
testified as follows:

"Q. Did you get anything the matter with your eye in the Crowe Coal Company? A. Yes, sir. Q. When was that? A. 1919. Q. Who treated you? A. Dr. Holmes. Q. An eye doctor? A. Yes, sir. Q. Dr. Breece never treated that eye at all? A. No, sir. Q. How long—what was the matter with your eye at that time? A. Well, when I was working in the room I was driving timber and a piece of bark flew in my eye, and the same evening I came down to Dr. Holmes, and he got it out and I went back to work in a couple or three days—the third day I went to work. That is all."

### Cross-Examination.

"By Mr. Hinton: Q. You made a mistake awhile ago when you stated you never had been hurt, or had anything the matter with your eye? A. No, sir, I didn't make a mistake. I admit I got hurt one time."

In view of that testimony, we have examined the record carefully to ascertain therefrom the condition of the eye at the time of the alleged injury. The record shows that the specialist selected by the claimant filed a report showing that the claimant reported to him "on February 11, 1929, with an ulcer of the central part of cornea of right eye, with a hypopyn in the anterior chamber with a severe secondary iritis. He gave a history of having gotten a foreign body in this eye while working at the mines a few days previous to this date." Witnesses testified that the claimant told them that the trouble with his eye was caused by the flu settling in it. Their testimony was not denied by him. Dr. Bollinger testified that he examined the claimant on July 17, 1926, for the Crowe Coal Company, and that at that time he had about a 50 per cent. vision in the right eye, and that "he gave me a history at that time of getting his eye injured at the Crowe Coal Company in the right eye and Dr. Breece told me, I believe he told me, the eye had been bad ever since that time." That testimony was not denied by the claimant.

The presumption, if any, that there was no loss of vision in the right eye at the time of the alleged injury was rebutted by proof of the fact that the claimant had sustained an injury to his right eye prior to the alleged injury. Upon proof of that fact, it became the duty of the claimant to establish by evidence either that there was no permanent loss of vision in his right eye at the time of the alleged injury, or, if there was a permanent loss of vision therein, the amount thereof, and, in the absence of such proof. the State Industrial Commission was not warranted in presuming that the injury theretofore sustained did not result in a permanent partial loss of vision in the right eye.

From the record as a whole, we must conclude that the claimant did not have 100 per cent. vision in his right eye at the time of the alleged injury on February 5, 1929. He would not, therefore, be entitled to an award for 85 per cent. loss of vision due to the alleged injury complained of, for according to this record his loss of vision now is only 85 per cent. If upon further consideration the State Industrial Commission finds that the claimant sustained a permanent loss of vision in the right eye from an accidental personal injury arising out of and in the course of his employment with the petitioner, then it must fix the percentage of loss after having first ascertained the percentage of vision in the eye at the time of the alleged injury.

In order that there may be no misunderstanding, we state the rule to be that, where one engaged in employment within the terms of the Workmen's Compensation Act, has a permanently defective vision in the right eye, and while so engaged sustains an injury to the right eye which arises out of and in the course of his employment, and which causes a permanent loss of vision in that eye in excess of the permanent loss of vision therein prior to the injury, the difference between the permanent loss of vision prior to the injury and the permanent loss of vision after the injury constitutes the amount of permanent loss of vision resulting from the injury, and is the basis of the award to be made to the injured workman therefor. An injured workman may not recover for a permanent loss of vision in an eye where there has been a prior injury to the eye, without proving the percentage of permanent loss of vision existing at the time of the injury complained of, or that there was no permanent loss of vision at that time. The burden is upon the claimant to establish the loss of vision caused by an injury arising out of and in the course of the employment, and that burden is not sustained by showing a present permanent loss of vision where the record shows a prior injury to the eye that may have caused a permanent loss of vision therein.

The third question is as follows:

"Whether or not the Commission may enter an award for compensation where the evidence is taken before an inspector and no transcript of the testimony is before the Commission at the time the award is made."

We are unable to say from this record that the Industrial Commission did not have the evidence before it at the time the award was made, and the presumption is that a transcript of the evidence was before the Industrial Commission at the time of the making of the award. In the absence of proof to the contrary, we must so hold.

The award of the State Industrial Commission as to temporary total disability is affirmed. The award as to permanent partial disability is vacated, and the cause is remanded to the Commission, with directions for further proceedings not inconsistent herewith.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur.