### G. A. NICHOLS, Inc., et al. v. BAILEY et al.

No. 22628. Opinion Filed Jan. 19, 1932.

James C. Cheek, for petitioners.

Arnold T. Fleig, for respondent.

RILEY, J. Petitioners bring this action to review an award of the State Industrial Commission in favor of respondent Bailey, hereinafter referred to as claimant, against G. A. Nichols, Inc., as employer, and New Amsterdam Casualty Company, as insurance carrier, herein referred to as petitioners.

Claimant received an accidental injury on January 30, 1931, while in the employ of petitioner G. A. Nichols, Inc., which injury comes within and is covered by the Workmen's Compensation Law. Claimant fell from a scaffold used in the erection of a two-story building, and received the injuries involved. He was sent to a hospital where

he remained for about four days. When he fell from the scaffold he struck the ground with the right side of his face and right shoulder. He suffered a cut on his right cheek; his right arm was injured and his left hand was lacerated. He filed his claim for compensation and was paid at the rate of $15.39 per week for four weeks and four days as for temporary total disability. On March 9, 1931, claimant and insurance carrier signed stipulation and receipt on Form No. 7, prescribed by the Commission. The stipulation and receipt were filed with the Commission on March 21, 1931. On March 24th, the Commission approved the stipulation and receipt and ordered the case closed as to temporary total disability by an order in the following form:

"It is therefore ordered: That said amount be approved and that the case be closed as to temporary total disability; the amount of permanent disability, if any, to be hereafter determined."

On May 15th claimant filed a motion for hearing, claiming for disfigurement and permanent partial injury of the right arm and left hand, and on May 25th filed amended motion claiming an additional permanent disability described as "permanent partial loss of vision in both eyes." Hearing was had resulting in an award for serious disfigurement, and allowing compensation therefor in the sum of $350. The Commission further found that the injury had resulted in permanent partial disability to extent of 25 per cent. loss of vision in each eye, and compensation was awarded therefor for 125 weeks.

Petitioners do not contest the award allowed for disfigurement. They assert that the award for permanent partial loss of vision is erroneous. Two expert medical witnesses testified, one on behalf of claimant and the other on behalf of petitioners. Their evidence as a whole is in direct conflict the one with the other. While the expert witness on behalf of petitioner was of the opinion that there was, in fact, no loss of vision in either eye, he testified, in substance, that upon the examination by him the most loss of vision indicated by the admissions of the claimant was in one eye about 8 1/3 per cent. loss of vision and in the other a little more. The expert testifying on behalf of claimant fixed the loss of vision in each eye at approximately 50 per cent. With the evidence of the experts thus in conflict, we cannot disturb the finding of the Commission on the question of extent of loss of vision. While the finding seems to be a compromise

between the two extremes testified to by the expert witnesses, we cannot say as a matter of law that there is no competent evidence reasonably tending to support the finding.

Petitioners point to the rule announced by this court in Wise-Buchanan Coal Co. v. Risco, 150 Okla. 190, 1 P. (2d) 411, and Ellis & Lewis v. Lane, 152 Okla. 273, 4 P. (2d) 104, to the effect that an injured workman may not recover for permanent total loss of vision where the evidence shows a loss of vision prior to the injury complained of, and that where the evidence shows a partial loss of vision prior to the injury involved, the amount of vision at the time of the latter injury must be shown. They also point to the rule announced in Cavin v. Kay & Kiowa Oil Co., 139 Okla. 47, 281 Pac. 232, holding in effect that mere evidence of an existing disability is not sufficient to support an award for compensation, and the claimant must show that the existing disability did not exist prior to the injury complained of.

It is contended that, under these rules, it is not enough that claimant showed defective vision after the accident, but that he should have been required to show by competent evidence that there was no defect of vision at the time of the injury. In this connection it may be observed that claimant testified that he had never had any injury to either eye prior to the accident involved; that he could see well prior to the accident; that he was 39 years old and had been in the army; that when he enlisted in the army (the date does not appear) he was examined thoroughly as to his vision, as well as other physical conditions, and the result of the examination was "A-1". This evidence was admitted without objection, and when taken in connection with the testimony of Dr. Shelton is amply sufficient to support the finding that the loss of vision shown, whatever per cent. it may be, was caused by the accidental injury. Dr. Shelton testified, in part:

"Q. Doctor, this loss of vision, is it permanent loss of vision in your opinion? A. Well, we have no pathology about the eyes to determine just what the loss of vision is from. His history that is largely visual acuity is all we have to go by, we would have it to confirm it; as a rule whenever there is an injury like that, it is permanent. Q. Doctor, have you seen lots of just such results before from injury of this kind? A. Yes, they are not uncommon."

As to the cause of loss of vision, he testified:

"A. It would naturally be my opinion if

he were a private patient of mine, with the history of having perfect vision before that time, I would naturally presume he had this loss of vision as a result of this accident; our authorities describe one or two conditions that result from just such injury; the court would probably understand it as a traumatic amblyopia, also, as a retinal anaesthesia; the cause of it is the sudden jarring, jars the delicate retina which is an extension of the optic nerves, causes an overstrenuousness that is traumatic, that is the description of Dr. DeSwynitz. We have no ophthalmis changes and, in fact, we have no pathology to account for those cases, we have those cases resulting in partial to complete loss of vision, which is permanent. Q. In other words, that's not an unnatural or uncommon condition from such a fall? A. No, sir."

Where no previous injury or other condition is shown which would affect claimant's vision, and his testimony is that he could see well before the accident, it is fair to presume that his vision was normal prior to the accidental injury.

There being competent evidence reasonably tending to support the finding and award, the petition should be and is hereby denied and the award affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., absent.