## INDIAN TERRITORY ILLUMINATING OIL CO. v. HENDRIXSON et al.

No. 22630. Opinion Filed May 3, 1932.

Rehearing Denied July 12, 1932.

Clayton B. Pierce and Fred M. Mock, for petitioner.

D. H. Evans and Arnold T. Fleig, for respondent.

ANDREWS, J. This is an original proceeding to review an award of the State Industrial Commission in favor of the claimant against the respondent, the petitioner herein.

On the 24th day of March, 1931, the claimant appeared before O. J. Caldwell, the claim clerk of the respondent, and reported to Mr. Caldwell that he had been injured on the 20th day of March, 1931; that he had been to a doctor to have his eye treated; that the injury occurred while the claimant was working on a lease helping the welder to put up gates around a well, and that it was caused by hammering on a metal fence post and the wind blowing rust from the post into his right eye. Mr. Caldwell at that time executed for the respondent a report of the accident, in which he set out the statement of facts made to him by the claimant. Thereafter, and on March 31, 1931, there was filed with the State Industrial Commission an employer's first notice of injury, dated March 24, 1931, which was based on the statement of facts made by the claimant to Mr. Caldwell. During the conversation with Mr. Caldwell. the claimant made out, in his own handwriting, an employee's first notice of injury, which was dated March 24, 1931, and which was filed with the State Industrial Commission. Therein he stated that the date of the accident was March 20, 1931, 3 p. m., the cause of the accident "was hammering on post when dirt got in eye," and the nature and extent of injury as "airtaited of right eye." He therein recited that he was discharged by the physician and was able to return to work "same date injury"; that he did not quit work on account of the injury; that he returned to work on the same day of the injury, and that he returned to work at the same wages.

On April 4, 1931, there was filed with the State Industrial Commission an attending physician's report by Dr. B. W. Miller, which was dated March 27, 1931. Therein Dr. Miller gave as a description of the nature and extent of the injury, "foreign body in the right eye," and as treatment, "removal and medicinal measure." He gave as his statement of the claimant's own words as to how the accident occurred, "dust lodged in the right eye." On April 25, 1931, the claimant, with other employees of the respondent, had been laid off as a part of the retrenchment program of the respondent. On that date there was filed with the State Industrial Commission, by the claimant, a motion to have the case set down for hear-

ing for determination of liability and extent of disability, in which it was recited that an injury occurred on the 25th day of March, 1931, and that the injury was caused by scales from a pipe striking the claimant in the right eye, resulting in a permanent partial loss of vision in both eyes. On May 2, 1931, there was filed with the State Industrial Commission an employee's first notice of injury, dated May 1, 1931, in which the claimant gave the date of the accident as March 25, 1931, the cause of the accident as "scale and metal from pipe went into right eye while working with welder," and the nature and extent of the injury as "loss of vision in both eyes." A number of hearings were held.

The testimony of the claimant shows that the injury was on the 25th day of March, 1931. It could not have been on that date, for, on March 24, 1931, the claimant had made out in his own handwriting an employee's first notice of injury. The claimant testified that on the 25th day of March, 1931, he was assisting in the construction of a fence and the hanging of a gate and that scales of metal flew from the heated pipe into his left eye. He said that his right eye was hurt some, but that his left eye was hurt worse; that the injury occurred about 3:30; that he continued to work until quitting time at 4 o'clock, and that he then went to the office and told them that he had gotten something into his left eye. He testified that he was treated by Dr. Miller, who gave him one treatment and released him and told him he could go back to work. He testified that at the time of the injury his eyes were in good condition and that they had never caused him any trouble before. Dr. Mussial was produced as a witness by the claimant. At the hearing on June 3, 1931, he testified that he had recently examined the claimant; that the claimant told him that "he got metal in both eyes"; that he found in the right eye a piece of metal and scarring in the upper lids of both eyes; that he found 20/50 permanent loss of vision in each eye, which he said meant 23 per cent. loss in each eye; that the irritation probably was caused by the rays of light from the welding torch, but that the irritation was not what kept him from seeing; that the claimant's eyes did not focus properly, and that that would have some effect upon the vision. The doctor's conclusions were based almost entirely upon the history of the case given to him by the claimant. Dr. J. P. McGee was offered as a witness by the respondent. He testified that he examined the claimant on April 23, 1931; that he found the claimant's eyes out of focus; that the claimant had a

loss of vision of 20/50 in each eye; that the claimant told him that about March 25th some rust flew into his right eye; that he said nothing about rust in the left eye, and that working with an electric torch sometimes would cause a loss of vision to the eyes. Both doctors testified that there were no scars on the cornea of either eye. Mr. A. R. Daugherty, the claim adjuster for the respondent, testified that the claimant talked to him about April 22, 1931, and complained to him that metal or rust had gotten into his right eye. Dr. Miller was offered as a witness by the respondent. He testified that the claimant came to him about the 20th day of March for treatment; that the claimant had a foreign body in his right eye, which he removed, and that the claimant made no complaint as to the left eye.

The record shows that prior to the alleged injury, the claimant was called by the other employees "Sleepy." He was asked why people called him by that name, and he answered, "I don't know—I guess you will just have to ask the boys why they called me that." The general foreman of the respondent testified that "* * * He looked sleepy-eyed. His eyes were about half closed all the time." An employee of the respondent testified that he was nicknamed "Sleepy" for the reason, "Well, he was droopy-eyed, that was the reason we gave him that name." A welder in the employ of the respondent testified that, about March 20. 1931, he and the claimant were pushing a truck out of the mud and that the spinning of the wheels caused mud to be thrown into the eye of the claimant, and that the claimant told him that he had mud in his eye. That testimony is corroborated by the driver of the truck. The claimant made no complaint to the other employees other than as to getting the mud in his eyes from the wheels of the truck. The claimant testified that he worked for the Ford Motor Company in 1929. and for other oil companies prior to the time that he was employed by the respondent, and that his eyes were examined by Dr. Boland prior to his employment by the Ford Motor Company. Dr. Boland testified that he examined the eyes of the claimant for the Ford Motor Company about June 6, 1929. and that he found a loss of vision of 20/30 in each eye at that time, which was equivalent to 8½ or 8⅓ per cent. The testimony of the claimant that he received metal in both eyes is contradicted by the testimony of his own witnesses. and it is in conflict with his written statement made to the State Industrial Commission a few days after the injury. We have not attempted to set out all of the testimony. We have set out here-

in only sufficient thereof to show the issues presented by the record.

It is immaterial whether the injury occurred by reason of mud from a truck wheel or rust from an iron pipe. If the injury arose out of the employment and occurred during the course of the employment, the respondent is liable, notwithstanding the cause of the injury was erroneously stated in the notices to the State Industrial Commission. The thing in the eye was what caused the injury, and, under the facts shown by the record in this case, it is immaterial how that thing got into the eye.

We think that this record shows a compensable injury to the right eye and that it does not show competent evidence reasonably tending to show a compensable injury to the left eye. That portion of the award based on an injury to both eyes is vacated.

The State Industrial Commission found that the claimant had sustained a 20 per cent. permanent loss of vision in each eye. The record is clear that there was a 20 per cent. permanent loss of vision in the left eye, but the existence of that loss of vision does not justify an award based thereon for the reason that it is not shown by the record that that loss of vision was due to an accidental injury arising out of and in the course of the employment.

The finding and award of the State Industrial Commission of a 20 per cent. loss of vision in the right eye is not sustained by any evidence. The record shows that the claimant had an 8½ or 8⅓ per cent. loss of vision in the right eye at the time he was examined by Dr. Boland in 1929. The percentage of the loss of vision in the right eye due to the injury could not have been greater than the difference between the percentage of the loss prior to the injury and the percentage of the loss after the injury. Wise-Buchanan Coal Co. v. Risco, 150 Okla. 190, 1 P. (2d) 411. The difference between 23 per cent. and 8 per cent. is 15 per cent. We are of the opinion that the record shows competent evidence reasonably tending to show a 15 per cent. permanent loss of vision in the right eye. An award should be made in favor of the claimant for 15 per cent. permanent loss of vision in the right eye.

The State Industrial Commission is directed to vacate the award made and to make an award in favor of the claimant based on a 15 per cent. permanent loss of vision in the right eye.

LESTER, C. J., and HEFNER, CULLI-SON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and RILEY, J., absent.