## KENYON et al. v. CUNNINGHAM et al.

No. 23790. Opinion Filed Dec. 6, 1932.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

Champion, Champion & Fischl (Emerson & Carey, on brief), for claimant.

SWINDALL, J. This is an original proceeding in this court to review an award of the State Industrial Commission made on the 28th day of May, 1932, in favor of T. Cunningham, claimant.

The claimant was injured December 14, 1928, while in the employment of respondent B. C. Kenyon, a building contractor. On that date he was shoveling mortar from a wheelbarrow on the ground to the first level of a scaffold, from which it was being conveyed by another employee to the brickmason on the second level, when the mason threw his trimmings back onto the mortar board causing hot mortar to splash into claimant's left eye. Claimant ducked and

turned and in so doing struck a prop of the scaffolding hitting it with his head at the inside corner of his left eye near his nose. Claimant received a severe blow—it knocked him off his feet, rendered him unconscious, caused his nose to bleed, and temporarily blinded him. He was taken immediately to Drs. Ferguson & Wails, who treated him for a short time.

On December 22, 1928, the parties executed a stipulation and receipt providing compensation for temporary total disability. on March 1, 1932, claimant filed a motion with the State Industrial Commission, alleging that as a result of the injury he had suffered a permanent total loss of vision in his left eye and a permanent 50 per cent. partial loss of vision in his right eye, and asking compensation for both. After hearing the evidence, the Commission made its award wherein it found the jurisdictional facts, etc.

It found that:

"* * * The claimant sustained an accidental personal injury on December 14, 1928, being an injury to the left eye, caused by mortar being splashed in left eye."

And that:

"* * * The evidence shows that the claimant has sustained a change of condition in that he now has a 90 per cent. loss of vision to the left eye."

It expressed its opinion, in part, as follows:

"That the claimant is entitled to the sum of $1,385.10 on account of the 90 per cent. loss of vision of the left eye sustained by him as a direct result of the accidental injury of December 14, 1928. * * *"

The order was entered accordingly. No finding was made and no opinion expressed with respect to the right eye.

The petitioners herein assert only one proposition upon which they contend that the award should be vacated. It is as follows:

"There is no evidence in the record to support the finding that the claimant has a 90 per cent. loss of vision in the left eye due to the injury alleged to have been received on December 14, 1928."

Dr. Theodore G. Wails, attending physician at the time of the accidental injury in 1928, and expert witness for petitioners, testified that he had carefully examined this claimant's eyes in 1923, and found them then in substantially the same condition as they were when he examined them in 1932 preparatory to the trial of this cause. He stated that claimant had a

cataract of long standing in each eye, that the lens were not present, having been absorbed, and that the eyes had been operated upon prior to 1923. He observed the cataracts again in 1926, within a few hours after the accident. His vision tests in 1923 and 1932 showed practical blindness in the left eye both times and as good, if not better, vision in the right eye in 1932 than in 1923. From this basis Dr. Wails held that claimant had suffered no loss of vision as a result of the injury received in 1928. Dr. J. W. Shelton and Dr. L. M. Westfall, for petitioners, corroborated Dr. Wails' view of the present physical condition of claimant's eyes. They agreed that the eyes had been operated upon to remove cataracts at some distant date, that the lens in each eye are absent, having been absorbed following a needling operation, and that the present deficient vision is due to opacity of the capsules long existent. All three of these doctors were of the opinion that the claimant's condition would not result from the accidental injury described. They stated that a blow which did not strike the eyeball would not cause a cataract. Dr. Shelton testified that such result could be obtained from an extrinsic blow only through concussion which would destroy the "whole lens." He further said that he had never read of such a blow causing a rent in a capsule. Dr. Wails stated the same opinion with respect to a rent.

Claimant testified in his own behalf that prior to the accidental injury he had never had any trouble with his eyes, that his left eye had been crossed since birth, that upon closing one he could see as well with one as with the other, and that he had never worn glasses except upon one occasion in 1923 when he had drawn some plans at night for a chicken brooder after which he had disposed of them. He admitted this last only after Dr. Wails had brought the fact to light. J. W. Clemmons, a fellow worker at odd times since 1922 and the man on the first scaffold platform at the time of the injury, said that he had never seen claimant wear glasses at work prior to the accident. Claimant said that his present condition has gradually come upon him since the injury in 1928. He has worn glasses since 1929. He stated unequivocally a number of times that his eyes have never been operated upon. Dr. J. Worth Gray appeared as an expert witness for the claimant. He examined claimant for the first time shortly before the trial. Dr. Gray found a condition somewhat different from that shown by petitioners' witnesses. He testified that the capsules in both eyes are broken, that the lens in each are absorbed,

but that more of the lens is absorbed in the right eye than in the left, that the part of the lens remaining in each eye is opaque, and that the portion of the lens still in the left eye is dislocated. He attributes the loss of vision, to opacity of the remaining lens and to the fact that the dislocated opaque lens in the left eye obstructs vision. He says that a blow is the only thing that would cause dislocation of the lens, and that a blow may cause a rent in a capsule. Basing his holding upon the undisputed nature of the blow and upon his findings of the condition of claimant's eyes, Dr. Gray expressed a positive opinion that the condition and therefore the present lack of vision resulted directly from the injury received.

Under the law as announced by numerous decisions of this court, in so far as the findings of fact and award of the Commission are supported by some competent evidence they must be sustained and in so far as they are not supported by some competent evidence they must be disapproved. See Oklahoma Civil Digest, vol. 4, Master & Servant, sections 98 and 99, its supplements, and the cases cited.

Petitioners' contend in their brief that Dr. Gray was not cognizant of the fact that the lens of claimant's eyes were absent in 1923, that he had cataracts at that time and also had them within a few hours after the injury; that he admitted upon cross-examination if claimant's eyes were cataractous within a few hours after the injury, it would not be due to the injury; and that, therefore, his opinion was not based upon a true history and was admittedly valueless in the light of these facts. This contention involves two elements: (1) That the undisputed evidence shows a prior defect of vision in claimant's eyes; and (2) that Dr. Gray's opinion was based upon an imperfect history and was therefore an erroneous opinion.

To support their view petitioners' cite three cases: Wise-Buchanan Coal Co. v. Risco, 150 Okla. 190, 1 P. (2d) 411; Ellis & Lewis v. Lane, 152 Okla. 273, 4 P. (2d) 104; and I. T. I. O. Co. v. Hendrixson, 158 Okla. 176, 13 P. (2d) 137 These cases deal with situations where the claimant has suffered a prior injury to his eye and receives an award for compensation disregarding the loss of vision which may have resulted therefrom. This court held in each instance that it was incumbent upon the Commission to consider the previous loss of vision and deduct it from the present percentage of loss. In each of these cases the evidence was undisputed that claimant had a prior injury to his eyes or a prior defect of vision. In the case at bar there is considerable competent evidence to sustain the proposition that claimant had, at the time of the injury, no such existing defect of vision as that claimed by petitioners. The defect claimed under Dr. Wails' testimony was practical blindness in the left eye and 80 per cent. loss of vision in the right eye. Had this been the case claimant would certainly have known it; his testimony to the contrary is competent evidence. Further, Dr. Gray supports claimant inasmuch as Dr. Gray failed to find the condition of claimant's eyes the same as that found by Dr. Wails and said by him to have existed since 1923. It follows that there was competent evidence in the record from which the Commission could find that no such defect of vision as claimed existed prior to the injury. This conclusion also resolves in favor of claimant the second element of petitioners' contention, for if such can be considered the true history and Dr. Gray's own findings support its validity, we cannot say that his opinion was not put upon a proper basis. We, therefore, hold that there was some competent evidence from which the Commission could find claimant suffered a loss of vision due to the injury.

It, however, does not follow that the Commission made a proper finding as to the degree of vision lost by virtue of the injury. We find in this record undisputed evidence that the claimant's left eye has been crossed since birth. The claimant himself testified to that fact. We find, further, the testimony of Dr. Wails and Dr. Shelton that due to its crossing claimant has not seen well with his left eye for years, and Dr. Gray's admission that a crossed eye is "a little weaker than the other." The only inference that can be drawn from the evidence in the record is that the eye was distinctly crossed. Claimant said that upon closing one eye he could see as well with one as with the other, and that his vision in his right eye was "perfect." Claimant might momentarily see as well with the crossed eye as with the other, but this does not dispute the fact that such an eye is not as useful as a normal one. If claimant had a crossed left eye from birth, which he admits, and still the vision in that eye was perfect, he was a rara avis indeed. The statement of the claimant that his vision in a crossed eye is "perfect" is testimony, but all testimony is not evidence. Lessig v. Reading Transit & Light Co., 270 Pa. 299, 303, 113 Atl. 381; Seiwell v. Hines (Pa.) 116 Atl. 919; Albrethsen v. Wood River Land Co. (Idaho) 231 P. 418, 429; Weck v. Reno Traction Co. (Nev.) 149

P. 65; Fluhart v. Seattle Electric, 65 Wash. 291, 118 P. 51; Mandel v. Washington Water Power Co. (Wash.) 144 P. 921, 922; Groth v: Thomann, 110 Wis. 496, 86 N. W. 178; Wray v. Southwestern Electric Light & Power Co., 68 Mo. App. 380. Thus, it appears from the record in this cause that a defect existed in claimant's eye at the time of the injury complained of and under the authority of the cases cited, supra, it was the duty of the Commission to determine its effect upon claimant's vision, then deduct the percentage of impairment existing from the percentage of impairment present after the injury. The Commission's failure in this respect is fatal to its award as made and the cause must be returned with directions to make the determination indicated and apply the rule of law announced above.

The Commission failed to make any finding with regard to the right eye, although the motion alleged disability therein due to the injury. After the evidence was offered and the Commission had made its findings as to the percentage of loss of vision in the left eye as a result of the accidental injury and made no finding as to the right eye, the claimant did not request a finding as to the percentage of loss of vision, if any, in the right eye as a result of said injury. Claimant had the right to make such request, and if the Commission found against him, to appeal within 30 days after a copy of the decision is sent to him by the Commission. The claimant having failed to request a finding and decision by the Commission as to the right eye, we assume he was satisfied with the finding and award as made.

For the foregoing reasons, the award of the State Industrial Commission is vacated and the cause remanded to said Commission, with directions to proceed consistently with this opinion.

RILEY, HEFNER, CULLISON, and KORNEGAY, JJ., concur. McNEILL, J., concurs in conclusion. CLARK, V. C. J., and ANDREWS, J., dissent. LESTER, C. J., absent.