## NELSON & MILLER ENGINEERING CO. et al. v. DAVIS et al.

No. 23674. Opinion Filed June 20, 1933.

Rehearing Denied Oct. 10, 1933.

Pierce, Follens & Rucker, for petitioners.

Fred M. Hammer and M. J. Parmenter, for respondents.

CULLISON, V. C. J. This is an original proceeding to review an award of the State Industrial Commission rendered April 30, 1932, in favor of John Davis. Petitioners appeal to this court and contend: First, the award for the loss of vision of the right eye is illegal; and second, the award based in part upon loss of vision of the left eye is illegal for the reason that there is no competent evidence to support the conclusion that any defect of vision is due to the injury to that eye on August 30, 1923.

The record discloses that claimant received an accidental injury on August 30, 1923, while in the employ of petitioner as a brick mason. On October 29, 1923, claimant filed his first notice of injury and claim for compensation, in which he stated that the cause of the injury was "laying brick and piece off of brick went in eye, causing corneal ulcer on the left eye." And on the same date Doctor Niemann filed his report with the Commission, showing that claimant was suffering from a corneal ulcer on the left eye caused from a piece of brick. On December 11, 1923, claimant filed a second notice of injury and claim for compensation in which he stated the cause of the injury was "three chips of brick in left eye." And on December 20, 1923, Doctors Niemann and Northcutt filed a report showing claimant's injury to be an ulcer on left eye caused from a piece of brick, and that they had referred claimant to Dr. Blanks. December 31, 1923, claimant filed a third notice of injury and claim for compensation with the Commission, in which the cause of the injury was described as "chip from brick."

A hearing was held by the Commission January 15, 1924, at which hearing the claimant appeared with his attorney. Claimant testified at said hearing as follows:

"Q. State what was your condition after that. After August 30th? A. Well, my condition was, I was not able to work on account of my eye. Tried and had to quit. * * * Q. How come you to quit? A. Couldn't stand it on account of my eye."

This is the only testimony given by claimant at said hearing as to the nature of his injury, but we observe that both times he referred to "eye" in the singular and nowhere made reference to the fact that both eyes were injured.

Dr. Niemann, who was the first physician to treat claimant, testified as follows:

"Q. What was the condition when he came to your office, doctor? A. It is my recollection he came to my office with small foreign particles, presumably brick dust, in one of his eyes. Q. Do you remember which eye? A. No, I don't. I think it was the left. Q. Did you treat Mr. Davis for a while? A. I did. Q. When did you turn him over to Dr. Blanks, eye specialist, as you know? A. I treated Mr. Davis for several days or several weeks, I don't know —a short time—until I was satisfied that all the foreign particles had been removed and the inflammatory condition apparently cleared up as far as I could detect, but Mr. Davis continued complaining of his eye, and not being an oculist I felt in justice to everyone concerned that an eye specialist should see the eye and I referred him to an eye man."

Under date of December 4, 1923, claimant executed an affidavit in regard to the injury, a part of which is as follows:

"I was injured in my left eye by pieces of brick caused by a falling brick striking another brick and knocking pieces of chipped brick into my eye, and Dr. Northcutt of Ponca City treated me and is still treating me for the injury sustained while in the employment of the Nelson Engineering Company. * * *"

January 28, 1924, the Commission made an award in said cause, finding that claimant was temporarily totally disabled for a period of 15 weeks and five days and that compensation be paid therefor. Following

said award nothing further occurred in said cause until August 24, 1931, at which time claimant filed a motion for rehearing in said cause to determine the extent of claimant's permanent disability. In said motion claimant states that he has a total loss of vision in his right eye and partial loss of vision in his left eye. This is the first instance that any mention had been made in said cause of any injury or loss of sight to claimant's right eye.

Several hearings were held by the Commission for the purpose of taking testimony. On January 19, 1932, claimant testified as follows:

"Q. Then when again did you experience any difficulty with that eye? A. Well, it has been in the last year or 14 months—it has been getting terribly bad. Q. In other words, from the fall of 1924 until the last 12 or 14 months, your eye has seemed to be all right? A. Yes, sir—it apparently did. Q. You suffered no ill effect during that period of time, such as necessitated your going to a doctor for treatment? A. No, sir."

Claimant further testified in regard to the condition of his eyesight at the date of said hearing, as follows:

"Q. When you close your left eye, you are entirely blind? A. Yes, sir. * * * Q. When did your right eye become totally blind? A. It started in, I should judge, 14 months ago—it started getting bad and gradually went out on me. Q. Was it totally blind when you saw Dr. Gifford, in Omaha? A. No, sir."

At a second hearing on April 5, 1932, claimant testified as follows:

"Q. Did you have any trouble in that eye during that period of time? A. In what respect? Q. I mean trouble? A. I did in that left eye—it bothered me. Q. Did you have any trouble in your other eye? A. Yes, I did a little. * * * Q. When? A. 1927-28."

Petitioners procured the deposition of Dr. William H. Stokes of Omaha, Neb., who was a member of the firm of Gifford, Potts & Patton, and procured from said doctors the original record of their treatment of John Davis of 3220 Lincoln boulevard, Omaha, Neb., on August 19, 1924, which said treatment is described as follows:

"8-19-24. Steel in right eye since this a. m. While cutting a window piece flew up and hit eye. Thinks this may have been steel or glass. Rx Boracic every 2 hrs with ½ gr cocain. (G) F. B. close to center of right cornea removed with some difficulty with a small ring of rust remaining. (G)."

The record further discloses that claimant was treated on August 25, 1924, and again on August 28th, at which time the eye was scraped and treated again on August 29th. The doctor further testified that after the removal of said foreign object from claimant's eye, a small ring of rust remained after the removal of the foreign body. Claimant admits that he lived in Omaha, Neb., and that his address there was 3220 Lincoln boulevard, the same as that given by the doctor just testifying. Claimant denied that he ever went to the doctor's office for any treatments upon the dates stated, but admitted going to said doctor's office to get his glasses changed in 1931.

The record further shows that Dr. Gifford and Dr. Patton, the two doctors who treated claimant in 1924, according to their records, are both deceased.

Dr. Wails testified in 1932 that claimant could only see light with his right eye and that the left eye is entirely normal in appearance except for his farsightedness. Upon being questioned further in regard to claimant's farsightedness, he testified as follows:

"A. No, sir; farsightedness is due to the eyeball being shorter than normal—one mm. shorter than an average eye—they are born that way. It is not produced by foreign bodies—they are born that way—everyone is born farsighted, lots more than others—it has been there always; it may not have bothered him before; he may not have been conscious of it before his injury, but the injury did not produce it."

Dr. Shelton testified for claimant, and on cross-examination testified as follows:

"Q. Isn't that, or hasn't he under those circumstances practically normal vision? A. Well, it's so close to it but at the same time that is not normal vision—he lacks it by 8.5 per cent. Q. You get that? A. Yes, sir 8.5. Q. Now, what is the cause for this difference of 8.5? A. That is refractive area for which he wears glasses. Q. That has no relation to this alleged accident? A. No, sir, I don't think so. Q. Now, do you find anything remaining in this man's left eye which you can say is the result of that ulcer which he had back in 1923? A. I find a very thin nebula that is not visible with the unaided eye over the lower pupillary margin, which I don't believe causes the loss of vision. Q. Has the scar or that ulcer disappeared? A. Apparently so if there was ever one there."

The deposition of Dr. Niemann, the physician who treated claimant immediately after the accident in 1923, was introduced,

in which deposition the doctor testified as follows:

"Q. Do your records show any complaint or any finding of any injury to the right eye at that time? A. They do not."

We have set out in detail the pertinent parts of the evidence in said cause because it is necessary in consideration of this case.

The first finding made by the Commission on April 30, 1932, states, in part:

"That arising out of and in the course of such employment the claimant sustained an accidental personal injury, the nature of said injury being brick dust or other foreign substances being imbedded in both eyes, while striking a brick with his trowel."

We observe that said finding of the Commission finds that claimant received foreign substances in both eyes at the time of the accidental injury, August 30, 1923. The record discloses that claimant filed three separate and distinct notices of said injury with the State Industrial Commission and that on each of said notices claimant designated his injury as pertaining to the left eye and in none of said notices did claimant claim that he had received any injury to the right eye. We also observe that claimant filed an affidavit in 1923, shortly after the injury, in which affidavit he stated that he was injured in the left eye by pieces of brick, but made no claim to having been injured in the right eye.

We also observe that the physicians who treated claimant at the time of the injury, both by their reports to the Commission and by their testimony before the Commission at a hearing on said cause, state that the injury was to the left eye, and nowhere is there a statement to the effect that claimant's right eye was injured at the time of the accidental injury which is the basis of this claim.

Claimant testified before the Commission in a hearing on said claim in 1924, and made no mention of both eyes having been injured. The first time that mention is made in said cause that claimant has suffered an injury to his right eye was when claimant filed his **motion for rehearing** in said cause in 1931, approximately eight years after the original injury.

We further observe that in the recent hearings in said cause medical experts testified, both for claimant and for petitioners, that the only loss of vision claimant had in his left eye was a result of the physical condition of the eye and not the result of any injury. Dr. Wails testified that the claimant was suffering from farsightedness, which is due to the eyeball being shorter than normal, 1 mm. shorter than the average eye,—they are born that way,—it is not produced by foreign bodies. Dr. Shelton testified for claimant that he found no condition in claimant's left eye producing a loss of vision that could be attributed to the accidental injury of 1923.

There is absolutely no expert medical testimony in the record that claimant is suffering any loss of vision to the left eye that can be attributed to the accidental injury received in 1923. Since there is no loss of vision in the left eye attributable to the injury received in 1923, this case does not come within the rule that where one eye is injured and sympathetic reaction causes injury to the other eye, then the injury to both eyes is compensable.

Claimant now contends that he received an injury to the right eye at the same time the left eye was injured in 1923. He never made such claim until about eight years after the injury. All the claims filed by claimant, the affidavit made by claimant, the testimony by claimant in 1924 before the Commission, the testimony of the doctors who treated him, are directly opposed to his claim of injury to the right eye in 1923. Petitioners introduce some important testimony as to the cause of the condition in claimant's right eye. Claimant admitted that his residence was 3220 Lincoln boulevard, Omaha, Neb. Claimant also admitted going to Dr. Gifford, Omaha, Neb., in 1931, to have glasses fitted. Petitioners introduced in evidence the records of Dr. Gifford's office relative to treatment given John Davis, of 3220 Lincoln boulevard, Omaha, Neb., on August 19, 1924. The record discloses that Davis came to the office with steel or glass in the right eye, close to the center of the cornea. That it was removed with difficulty and left a ring of rust remaining in the eye. Further treatments followed for 10 days.

This points to the reason for the loss of vision in claimant's right eye, and was approximately one year after the injury which is the basis for this claim. The facts and circumstances do not substantiate the first paragraph of the finding of the Commission that claimant was injured in both eyes in 1923 by getting brick dust or other substances imbedded in both eyes, but, on the contrary, the evidence fails to show by any

competent evidence an injury to claimant's right eye in 1923. The left eye was injured, but said injury did not result in permanent loss of vision in the left eye.

In the fourth paragraph of the findings of fact of the Commission, the Commission treated claimant's motion as a motion to reopen upon the ground of a change of condition, and found that claimant had sustained a change of condition and has a permanent loss of vision of the right eye and 5 per cent. loss of vision of his left eye, all of which is a result of the accidental injury, the basis of this claim. We observe that the Commission based their findings of fact upon the grounds that the case was one being tried to determine whether or not there had been a change of condition since the last award. In the case of K. D. Oil Co. v. Datel, 145 Okla. 264, 292 P. 564, this court laid down the rule to be followed where claimant seeks to show a change of condition:

"In order to reopen a case and award further compensation upon account of change of condition, the claimant must establish before the Industrial Commission that there has in fact been a change of condition since the original award was made, and, further, that same was due to the original injury."

In the following cases, this court has passed upon the question of liability in eye injury cases and established the following rule: In the case of Kansas City Structural Steel Co. v. Yarber, 153 Okla. 121, 5 P. (2d) 160, the court said:

"Where, in a proceeding to review an award made by the State Industrial Commission, involving a claim for alleged loss of both eyes, and the award is for permanent total disability because of the loss of both eyes, it appears that there is competent evidence tending to support the finding of the Commission as to the cause of the loss of one eye, but no competent evidence to support the finding as to the cause of the loss of the other eye, the finding and award as made will be reversed."

Also, in the case of Indian Territory Illuminating Oil Co. v. Hendrixson, 158 Okla. 176, 13 P. (2d) 137, the court held:

"Percentage of vision lost by reason of an injury to an eye can be no greater than the percentage of vision existing at the time of the injury to the eye. The difference between the permanent loss of vision prior to the injury and the permanent loss of vision after the injury constitutes the amount of permanent loss of vision resulting from the injury, and must be the basis of the award to be made to the injured workman therefor."

Under the authorities just cited, before claimant could open said cause and procure further award on the ground of change in condition, it became necessary that he establish that there had been a change of condition since the original award was made and that the same was due to the original injury.

In the Kansas City Structural Steel Company Case, this court announced the rule that while a person may have a loss of vision in both eyes, but there is no competent evidence to support a finding as to the cause of loss of vision in one of the eyes so as to connect the same with the accidental injury, the basis of said claim, then said award cannot be sustained and will be vacated. In the case at bar there is no competent evidence to show that the loss of vision to claimant's right eye was caused by the accidental injury received in 1923. The evidence is overwhelmingly to the contrary. It was necessary that claimant establish connection between the injury received and the disability to his right eye. This the claimant failed to do.

In the Indian Territory Illuminating Oil Company Case, this court announced the rule that the percentage of vision lost by reason of an injury to an eye can be no greater than the percentage of vision existing at the time of the injury to the eye. In the case at bar, claimant received an accidental injury to the left eye in 1923. The evidence of medical experts testifying for both petitioner and claimant shows that claimant had a small loss of vision in the left eye, but the expert testimony further shows that the loss of vision is due to a physical condition of the eye and not an injury or disability resulting from the accidental injury.

The record shows that claimant was suffering from farsightedness, and that farsightedness is a physical condition existing since the birth of the individual. He possessed the farsightedness before the accidental injury, and claimant's own physician admitted that he found no indication that the loss of vision in claimant's left eye was due to the accidental injury. Since the loss of vision existing in claimant's left eye is due to farsightedness, and said condition existed prior to the accidental injury, under the rule announced in the I. T. I. O. Case, supra, there is no compensable disability in claimant's left eye.

Under the rule of this court announced in the K. D. Oil Company Case and the Kansas City Structural Steel Company Case, the loss existing in claimant's right eye was not shown to be connected with the original injury, and is not compensable.

After a careful consideration of the entire record and the authorities in this case, we hold that the petition to vacate the award should be granted, with directions to the State Industrial Commission to vacate said award.

RILEY, C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur. WELCH, J., absent.